[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14376
_____

D.C. Docket No. 5:06-cv-00945-KOB-JEO


DOYLE LEE HAMM,

Petitioner - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF ALABAMA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 3, 2015)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

1

Petitioner-Appellant Doyle Lee Hamm was convicted in 1987 of the capital crime of robbery-murder and sentenced to death by an Alabama court. Following unsuccessful direct appeals and collateral proceedings in the Alabama state courts, Hamm filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in federal court, which the district court denied. Hamm appeals the rejection of his petition on three grounds. Hamm contends that unconstitutionally obtained prior convictions were impermissibly used as an aggravating circumstance in his death sentence. He also asserts that his trial counsel was constitutionally ineffective in presenting a case in mitigation of the death penalty. And finally, Hamm argues that his conviction is infirm because the prosecution failed to turn over evidence that would have impeached the state's primary witness. After a thorough review of the record and arguments, we affirm the denial of Hamm's petition.

## I.

Petitioner-Appellant Hamm was convicted of robbery-murder, in violation of Ala. Code § 13A-5-40(a)(2), and sentenced to death by an Alabama court in 1987. The events that led to this conviction are recounted below, as drawn from Hamm's proceedings in both state and federal court.

A. The Criminal Offense and Trial

On January 24, 1987, Patrick Cunningham was working as the desk clerk for the Anderson's Motel in Cullman, Alabama. *Hamm v. State*, 564 So. 2d 453,

455 (Ala. Crim. App. 1989) ("*Hamm Direct Appeal*").    At approximately 10:30 p.m., Kathy Flanagan[1] stopped at the motel to rent a room for the night.    *Id.*  While Flanagan was registering, a small-framed white male entered the motel to ask about a room.  *Id.*  Cunningham informed the male that he needed a reservation, and the male left.  *Id.*  Moments later, the first male returned accompanied by a second male wearing blue jeans and a faded green army jacket.  *Id.*  Cunningham told Flanagan that "it 'looks like there is going to be trouble'" and apparently pointed Flanagan in the direction of a room, but Flanagan returned to her car.  *Id.* From her car, Flanagan saw the individual in the green jacket point a revolver at the registration desk but could not see behind the desk; she also saw the first male standing by the door and noticed a banged-up 1970s model car in the parking lot, with its engine running, and possibly a third individual inside.  *Id.*  Flanagan left the scene, drove to a nearby telephone, and called police to report a possible robbery. *Id.*

Upon arriving at the motel, police discovered Cunningham's body on the floor behind the front desk.  *Id.*  Cunningham had been killed by a single shot to the head from a .38-caliber pistol.  *Id.*  The evidence further established that he had been shot in the temple from a distance of approximately 18 inches while he was

---

[1] In some documents, her name is spelled "Flannagan."

lying on the floor.  *Id.*  Cunningham's wallet, containing approximately $60 was missing, as was approximately $350 from the motel's cash drawer.  *Id.*

A Cullman police officer learned that two men matching the descriptions given by Flanagan were also wanted for a robbery-murder that had taken place in Mississippi that same day.  *Id.* at 455-56.  A nickel-plated .38-caliber revolver had been taken during that robbery.  *Id.* at 456.

On January 25, the same officer spoke with Douglas Roden, who had been stopped while driving a car matching the description given by Flanagan.  *Id.* Roden claimed that he and his sister-in-law, Regina Roden, had been kidnapped by Hamm and two others.  *Id.*  Roden further stated that he and Regina had been held captive in a trailer home during the time of the motel robbery while Hamm and another individual left with the car.  *Id.*  In addition, Roden asserted that he and Regina had escaped the trailer that morning and had taken the car.  Roden directed police to the trailer.  *Id.*  At some point, the police learned that the trailer was owned by Hamm's nephew.  *Id.*

Later that day, a search warrant was obtained for the trailer and a fugitive-from-justice warrant was obtained for Hamm for a robbery in Mississippi.  *Id.* During the search of the trailer, authorities discovered a nickel-plated .38-caliber pistol, a green army jacket, and several rounds of .38-caliber ammunition, including some in the pocket of the jacket.  *Id.*

4

Hamm was arrested and booked on the fugitive warrant. *Id.* He initially denied any involvement in the murder and robbery at the Anderson's Motel, and Flanagan failed to identify Hamm in a lineup. *Id.* Nevertheless, Hamm was placed under arrest for the motel robbery. *Id.* The next day, Hamm gave a statement to the police that was recorded, in which he admitted his initial statements were false and he confessed to the robbery and murder of Cunningham. *Id.*

Subsequently, it was discovered that the Rodens had lied in their initial statements. *Id.* They had not been kidnapped and, in fact, Douglas and Regina were the two individuals present with Hamm at the Anderson's Motel during the robbery and murder; Douglas was the first male individual to enter the motel. *Id.* The Rodens entered into agreements with the state where, in exchange for testimony against Hamm, they would receive lesser charges. Douglas agreed to plead guilty to murder and received a life sentence; Regina pled guilty to robbery and hindering prosecution. *Id.* at 456-57.

Hamm was tried in the Circuit Court of Cullman County, Alabama, and found guilty by a jury of robbery-murder on September 26, 1987. *Id.* at 464. A separate sentencing hearing was then held before the same jury. *Id.* During the hearing, the state moved into evidence all evidence from the guilt phase of the trial as well as two convictions for robbery Hamm received in Tennessee in 1978. *Id.* at 464, 466.

Hamm's counsel called two witnesses in mitigation: Hamm's sister Ruthie Murphy[2] and a Cullman County deputy sheriff, Dennis Johnson. Murphy testified about Hamm's harsh upbringing, the extensive criminal histories of Hamm's brothers, Hamm's alcohol and drug abuse, and Hamm's epilepsy. Murphy also testified about their abusive father, who, among other things, was a criminal and alcoholic who forced his children to drink alcohol and steal (or otherwise they weren't "a Hamm"), required the children to bring him switches (presumably for beatings), and would line his children up and shoot a firearm over their heads. Johnson testified that Hamm had been a cooperative prisoner during his time in county jail.

The jury recommended on September 28, 1987, by a vote of 11 to 1, that Hamm be sentenced to death. The state court then found that two aggravating circumstances had been proved beyond a reasonable doubt: that a capital offense was committed during a robbery (the underlying crime here of robbery-murder satisfied that factor), and that Hamm had previously been convicted of a felony involving the use, or threat of violence to a person (the Tennessee convictions). *Hamm Direct Appeal*, 564 So. 2d at 466.

The sentencing court then found that none of the statutory mitigating factors were present in Hamm's case, but did find the existence of non-statutory mitigating

---

[2] In some documents, Hamm's sister's last name is spelled "Murphree."

6

factors based on Murphy's and Johnson's testimony. *Id.* at 466-68. The court credited Murphy's testimony and found that Hamm's father "created an obstacle to the development of [the Hamm boys'] character, which was, indeed, difficult to overcome," and that Hamm's upbringing "absolutely had a negative influence on the Defendant." *Id.* at 468. The court noted, though, that Hamm's two sisters were able to rise above this influence and be good citizens. *Id.* The court also acknowledged that Hamm had a poor education and suffered from epilepsy. *Id.* Finally, the court recognized that Hamm had been a cooperative prisoner at Cullman County jail, that he had agreed to talk to offenders about changing their lives, and that he did voluntarily confess to the crime. *Id.*

Despite the existence of these mitigating factors, the court found that the aggravating circumstances outweighed them and sentenced Hamm to death by electrocution. *Id.* at 469. Hamm's conviction was upheld on direct appeal to the Alabama Court of Criminal Appeals, *id.* at 464, and the Alabama Supreme Court, *Ex parte Hamm*, 564 So. 2d 469, 473 (Ala. 1990). Both courts conducted a plain-error review of the proceedings and found nothing warranting reversal. *Hamm Direct Appeal*, 564 So. 2d at 463-64; *Ex parte Hamm*, 564 So. 2d at 473. The United States Supreme Court denied certiorari. *Hamm v. Alabama*, 498 U.S. 1008, 111 S. Ct. 572 (1990).

B.  State Collateral Proceedings

On December 3, 1991, Hamm filed a collateral attack on his conviction and sentence under Rule 32 of the Alabama Rules of Criminal Procedure.  A hearing was held on July 26, 1999, and the state trial court denied Hamm relief on December 6, 1999.[3]  The Alabama Court of Criminal Appeals ("ACCA") affirmed the denial of relief on February 1, 2002, and the Alabama Supreme Court denied certiorari on May 20, 2005.  *See Hamm v. State*, 913 So. 2d 460 (Ala. Crim. App. 2002) ("*Hamm Collateral Appeal*"). The United States Supreme Court denied certiorari on the state collateral proceedings in November 2005.  *Hamm v. Alabama*, 546 U.S. 1017, 126 S. Ct. 651 (2005).

Of particular relevance to the appeal before this Court, Hamm raised in his Rule 32 petition a claim that the underlying Tennessee robbery convictions were impermissibly used as aggravating circumstances in his sentencing because they were allegedly obtained via an unconstitutional guilty plea, and, therefore, were *effectively* invalid although never *actually* invalidated by any court.  *Hamm*

---

[3] The Rule 32 Court's order, entered on Monday, December 6, 1999, was apparently a verbatim adoption of the state's "Proposed Memorandum Opinion" that was filed on Friday, December 3, 1999.  The Rule 32 Court did not even strike the word "Proposed" from the order. Although this procedural shortcut has no bearing on our disposition of Hamm's federal habeas appeal, *see Jones v. GDCP Warden*, 753 F.3d 1171, 1182-83 (11th Cir. 2014), we take this opportunity to once again strongly criticize the practice of trial courts' uncritical wholesale adoption of the proposed orders or opinions submitted by a prevailing party. *See, e.g., Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 571-73, 105 S. Ct. 1504, 1510-11 (1985); *Colony Square Co. v. Prudential Ins. Co. of Am.* (*In re Colony Square Co.*), 819 F.2d 272, 274-75 (11th Cir. 1987).

*Collateral Appeal*, 913 So. 2d at 479.  The ACCA found that this claim was procedurally barred by Rules 32.2(a)(3) and 32.2(a)(5), Ala. R. Crim. P., because it could have been raised at trial or on direct appeal but was not.  *Id.*  Alternatively, the ACCA also found that Hamm's trial and appellate counsel were not deficient because no legal authority supported the contention that "trial counsel had a duty to challenge in a Tennessee court the merits of the nine-year-old convictions so that he could then prevent consideration of the prior convictions at the 1987 capital sentencing hearing."  *Id.*

Hamm also asserted in the state courts that the prosecution withheld exculpatory information from the defense during trial.  Specifically, Hamm argued that the prosecution did not turn over inconsistent statements from Flanagan until her cross-examination was underway, and failed to turn over sealed records regarding Douglas Roden that could have been used for impeachment.  *See id.* at 479-80.  The Flanagan claim was raised in the Rule 32 petition, and the Rule 32 trial court found it was barred because it had been raised and addressed at trial and it had not been raised again on direct appeal.  *Id.*  As for the Roden claim, because it was not raised in the Rule 32 petition, the ACCA held that it could not be considered on appeal.  *Id.* at 480.  Alternatively, the ACCA concluded that the Roden claim was also procedurally barred because it could have been raised at trial or on direct appeal.  *Id.*

9

Hamm also raised a number of ineffective-assistance-of-counsel claims in his Rule 32 petition. Among those relevant to this appeal, Hamm claimed that his trial attorneys were ineffective because they "failed to properly investigate aggravating and mitigating circumstances for the penalty phase and failed to present 'compelling evidence' at the sentencing portion of Hamm's trial." *Id.* at 486. The Rule 32 Court ruled, and the ACCA affirmed, that trial counsel were not deficient in investigating and presenting mitigation evidence. *Id.* at 486-88. Hamm produced documents at the Rule 32 hearing that he believed should have been offered by counsel at trial, but the state court considered the documents to be largely cumulative of Hamm's sister's testimony. *Id.* at 487. Further, one of Hamm's trial attorneys, Hugh Harris, testified that the documents would have put more of Hamm's own criminal history before the jury, so, for that reason, he opted only for the sister's testimony. *Id.* The ACCA held that this strategic decision was "virtually unassailable," *id.*, and affirmed that trial counsel's performance was not deficient, adding that, even if the proffered documents had been presented to the jury, the outcome would not have been different. *Id.* at 488.

In addition, Hamm contended that his trial counsel were ineffective for not ensuring that the charge of "armed robbery" was removed from the Tennessee conviction records submitted to the jury because Hamm had only pled guilty to "simple robbery." *Id.* at 488. The record reflects, and the Rule 32 Court found,

that Hamm's attorney did object to this language and, at least initially, the prosecutor agreed to redact the "armed robbery" language. *See id.* Nevertheless, the "armed robbery" language was apparently still shown to the jury when the judge eventually overruled the objection. Despite this, the Rule 32 Court found that neither the jury instructions nor the trial court's sentencing order referenced or relied upon the "armed robbery" language in any way. *Id.* at 488. Thus, the ACCA affirmed the Rule 32 Court's determinations that counsel was not deficient because he had objected and that Hamm was not prejudiced because the sentencing court considered the simple robbery convictions only in its sentencing order. *Id.*

Hamm also, apparently, claimed in his Rule 32 petition that his counsel was ineffective during the guilt phase of his trial for not adequately objecting to the prosecution's failure to turn over the exculpatory and impeaching Flanagan and Roden materials. *See id.* at 485-86; *see also Hamm v. Allen*, 2013 WL 1282129, at *91 (N.D. Ala. Mar. 27, 2013) ("*Hamm § 2254 Order*"). On collateral appeal, though, the *Brady*-related[4] ineffective-assistance claims were included in a "laundry list" of over twenty ineffective-assistance allegations presented to the ACCA with "no citations to the record or to any legal authority to support his specific allegations" beyond a broad statement that details of the claims could be found in Hamm's initial petition. *Hamm Collateral Appeal*, 913 So. 2d at 485-86.

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

11

Because Hamm provided no argument or citations to the record or legal authority, the ACCA held that Hamm's brief ran afoul of Rule 28(a)(5) of the Alabama Rules of Appellate Procedure.[5]    Accordingly, the ACCA found that Hamm waived appellate review of these claims.  *Id.*

Hamm also asserted that his counsel on direct appeal (the same attorneys who represented him at trial), were ineffective because they "failed to raise any of the substantive issues" discussed elsewhere in Hamm's Rule 32 petition.  *Id.* at 491.  Both attorneys testified at the Rule 32 hearing, and the Rule 32 Court found that their decisions to limit Hamm's appeal to the most viable issues bore "the hallmark of effective appellate advocacy."  *Id.*  The ACCA agreed.  *Id.*  Moreover, the ACCA noted that it and the Alabama Supreme Court had conducted a plain-error review on direct appeal and had found no reversible error, so even if counsel had raised certain claims, they would not have been sustained.  *Id.*

---

[5] The relevant provision is now found in Rule 28(a)(10), Ala. R. App. P., which governs the contents of appellate briefs and provides,

> (10) Argument. An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on. Citations of authority shall comply with the rules of citation in the latest edition of either The Bluebook: A Uniform System of Citation or ALWD [Association of Legal Writing Directors] Citation Manual: A Professional System of Citation or shall otherwise comply with the style and form used in opinions of the Supreme Court of Alabama. Citations shall reference the specific page number(s) that relate to the proposition for which the case is cited[.]

12

C. Federal Habeas Petition

Hamm filed a federal petition for habeas corpus under 28 U.S.C. § 2254 in the Northern District of Alabama on May 16, 2006. Briefing was completed in April 2007, and the district court denied Hamm an evidentiary hearing in March 2008. On March 26, 2013, the district court issued a thorough 167-page order denying Hamm's § 2254 petition. *See Hamm § 2254 Order*, 2013 WL 1282129.

Hamm's federal petition sets forth twenty-four substantive claims (labeled "A" through "X" in the district court's order); Claim F is an ineffective-assistance-of-counsel claim that sets forth thirty-two alleged instances of ineffective representation. The § 2254 claims relevant to this appeal are described below.

*1. The Tennessee Convictions*

Hamm argued to the district court in Claim C that the two Tennessee convictions used as an aggravating factor in Hamm's sentencing were unconstitutionally obtained, and, therefore, were invalid and could not have been used as an aggravating factor. *Id.* at *35. The district court did not reach the merits of this claim, however, because it found that it did not have jurisdiction to address the validity of the Tennessee convictions under the Supreme Court's decision in *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 121 S. Ct. 1567 (2001), and, alternatively, that the claim was procedurally defaulted. *Hamm § 2254 Order*, 2013 WL 1282129 at *38, *39.

After his conviction in Alabama, Hamm's post-conviction counsel attempted to challenge the Tennessee convictions in state and federal court, beginning in 1992. The Tennessee courts determined that the statute of limitations on Hamm's challenge had run and that Tennessee law did not permit habeas relief when an individual was not held in custody and his convictions had expired. *Id.* at *35 n.26. The Tennessee appellate court affirmed, and the Tennessee Supreme Court declined to hear the case. *Id.*

Hamm then pursued federal relief in the Middle District of Tennessee. *Id.* at *35 n.27. The federal court did not consider the petition as an attack on his Alabama conviction, but rather as one directed to only the Tennessee convictions. *Id.* That court held that it did not have jurisdiction to grant relief under § 2254 because Hamm was not in custody on the Tennessee convictions. *Id.* Hamm conceded that *Maleng v. Cook*, 490 U.S. 488, 108 S. Ct. 1923 (1989), controlled the issue. Both the Tennessee district court and the Sixth Circuit denied a certificate of appealability, and the Supreme Court denied certiorari. *Hamm § 2254 Order*, 2013 WL 1282129 at *35 n.27.

The district court, in considering Hamm's habeas petition in this case, first held that *Coss* prohibited the district court from reaching the merits of the expired Tennessee convictions when reviewing the Alabama conviction on a § 2254 petition. *Id.* at *35-38. The district court found that *Coss* applied to Hamm's

14

capital sentence and that the sole exception articulated in *Coss* did not apply to Hamm. *Id.* Alternatively, the district court determined that Hamm's claims regarding the Tennessee convictions were procedurally defaulted in the state court and that Hamm could not overcome the default with a showing of cause or prejudice or by showing he was actually innocent of the Tennessee crimes to which he pled guilty. *Id.* at *38-39.

### 2. The Mitigation Case

In Claims F.4, F.14, and F.30, Hamm argued that he was entitled to habeas relief because his trial counsel failed to adequately investigate and present a mitigation case during the penalty phase of his trial. *Id.* at *55. Hamm argues that by relying on the testimony of only two witnesses, counsel failed to uncover and present "a wealth of documents" and testimonial evidence concerning the criminal histories of Hamm's family members, Hamm's school records, Hamm's history of substance abuse, and Hamm's medical and mental-health records. *Id.* at *55-56. Hamm also asserts that it was improper for his counsel to introduce certain mitigation evidence through his sister's "bald assertions" that "sounded like a bunch of lies" without any "corroborating" documentary evidence.

Although Hamm presented his mitigation-related ineffective-assistance argument as three separate claims, the district court evaluated them together. *See id.* at *55. Because the Alabama state courts had considered these claims on their

merits, *Hamm Collateral Appeal*, 913 So. 2d at 478-79, 486-88, the district court limited its § 2254 analysis to a deferential review of the evidence before the state courts. *Hamm § 2254 Order*, 2013 WL 1282129 at *56-57.

The ACCA had concluded that Hamm's trial counsel competently investigated and presented a mitigation case. See *Hamm Collateral Appeal*, 913 So. 2d at 486-88. In reviewing this finding, the district court determined that the Alabama state courts had reasonably applied the ineffective-assistance-of-counsel standards articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and that the cases cited by Hamm to support his inadequacy argument were all distinguishable. *Hamm § 2254 Order*, 2013 WL 1282129 at *59-65.

### 3. The Alleged Brady Violation

In Claim B, Hamm argues that the prosecution failed to turn over evidence that Douglas Roden "had been 'diagnosed as having borderline and possibly antisocial personality, and was suffering from alcohol and substance abuse problems.'" *Id.* at *25. Hamm contends that, without this evidence, he had no evidence to impeach Roden—who was the state's principal witness and only alternative shooter—about Roden's record of lying, substance abuse, and mental-health problems. *Id.*

Although Hamm concedes that the Roden claim was not raised at trial or on direct appeal, he asserts that that is because Roden's sealed records were not

16

discovered until April 20, 1995—more than seven years after trial. *Id.* at *26. Similarly, the Roden claim was not raised in the Rule 32 petition, which was initially filed in December 1991. *Id.* The district court observed that this information was discovered four years before Hamm's Rule 32 evidentiary hearing but pointed out that Hamm never amended or modified his petition to include the Roden claim. *Id.* Nonetheless, Hamm contends that this information was properly before the Rule 32 Court because Hamm submitted the records to the court in *pro se* capacity, despite the fact that he was represented by counsel at the time. *Id.* In submitting the records, Hamm also asked that the court consider the attached evidence, but he offered no explanation of its relevance. *Id.*

Hamm renewed his request that the Rule 32 Court consider "all the evidence" at the evidentiary hearing. *Id.* Hamm's Rule 32 counsel apparently asked about the records, to which the court responded, "Yes. Yes. All of that has been file stamped and included as part of the Court record." *Id.* (quoting the Rule 32 hearing transcript). During the Rule 32 hearing itself, the Roden records were not mentioned or specifically offered into evidence. *Id.* at *27. Thus, the first time that the Roden claim was expressly articulated was in the Rule 32 appeal before the ACCA, where the ACCA found the claim barred because it was not presented to the Rule 32 Court, or, alternatively, because it could have been raised at trial or on direct appeal but was not. *Id.*; *see Hamm Collateral Appeal*, 913 So. 2d at 480.

17

During the § 2254 proceedings in the district court, the state argued that the Roden *Brady* claim was procedurally defaulted because it was not presented to the trial court, on direct appeal, or in the Rule 32 petition. *Hamm § 2254 Order*, 2013 WL 1282129 at *27. Hamm, on the other hand, asserted that this claim was raised through the *pro se* materials presented to the Rule 32 Court. *Id.* The district court concluded that the claim was not fairly presented in the state court because Hamm, while still represented by the same counsel who helped uncover the Roden records, had ample opportunity between 1995 and 1998 to amend the Rule 32 petition; Hamm failed to explain the relevance of the materials he submitted to the court *pro se*; and Hamm's counsel at the Rule 32 hearing never argued or admitted into evidence those documents during the hearing. *Id.* at *28. Accordingly, the district court found the ACCA's holding to be proper and that this procedural default in state court barred federal habeas relief. *Id.* The district court then held, citing *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012), that Rule 32 counsel's failure to preserve a *Brady* claim before the collateral Rule 32 Court cannot constitute cause to overcome the procedural default. 2013 WL 1282129 at *28.

Alternatively, the district court determined the Roden *Brady* claim to be without merit. The court "harbor[ed] serious questions" about whether the withheld impeachment evidence was truly favorable to Hamm and held that the evidence "was not material to Hamm's case at either the guilt or penalty phase."

*Id.* at \*29-30.  The district court felt that the evidence of Roden's possible anti-social personality, his illicit drug abuse, and his lying about the drug abuse, "would not have resulted in a devastating cross-examination for Roden at trial," and would "certainly not [have been] enough to undermine confidence in the guilt or penalty phase of the trial," in light of the topics Roden was cross-examined on, the corroborating testimony of Regina Roden, and Hamm's own confession.  *Id.*

## II.

A. General Standards in § 2254 Cases

Federal law permits a prisoner held "in custody pursuant to the judgment of a State court" to seek habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Generally, a prisoner must first "fairly present" his federal claims to the state court and exhaust his state-court remedies before seeking federal habeas relief.  *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

When a state court has adjudicated a prisoner's claim on the merits, a federal court may not grant habeas relief with respect to such a claim unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

19

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  These standards are highly deferential and demand that state court decisions be given "the benefit of the doubt."  *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1325 (11th Cir. 2013) (en banc) (internal quotation marks and citation omitted).  A decision "is not 'contrary to' federal law unless it 'contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts.'"  *Id.* (citation omitted).  A state court's decision "is not an 'unreasonable application' of federal law unless the state court 'identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply.'"  *Id.* (citation omitted).  The federal court does not ask whether the state decision is correct, but rather whether it is unreasonable.  *Id.* (citation omitted).

If a prisoner fails to present his claims to the state court in a timely and proper manner, and the state court declines to address the merits, those claims are procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554 (1991).  Procedural default "ordinarily qualifies as an independent

20

and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465, 129 S. Ct. 1769, 1780 (2009).  This bar on federal habeas relief for procedurally defaulted claims can be overcome, though, if the prisoner can demonstrate "cause" for the default and "prejudice" suffered as a result, or the prisoner can demonstrate that failure to consider his claims would result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565.  The "fundamental miscarriage of justice" test applies narrowly in the "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 1470 (1991).

The "existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986).  Objective factors that demonstrate cause include interference by state officials that frustrates compliance with the procedural rules, the unavailability to counsel of the factual or legal basis for a claim, and constitutionally ineffective assistance of counsel. *McCleskey*, 499 U.S. at 493-94, 111 S. Ct. at 1470.  To establish prejudice, the "habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice,

but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 494, 106 S. Ct. at 2648 (alterations in original) (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982)).

B. The *Martinez* Decision

Until 2012, it was generally established that because a prisoner has no constitutional right to counsel in collateral proceedings, ineffective assistance of counsel during those proceedings cannot create cause to overcome procedural default in those proceedings. *See Coleman*, 501 U.S. at 757, 111 S. Ct. at 2568. However, the Supreme Court issued a limited qualification to this tenet in *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012). In that case, an Arizona prisoner sought to overcome the procedural default of his ineffective-assistance-of-trial-counsel claim by arguing that his post-conviction attorney was constitutionally ineffective for failing to raise the trial-counsel claim in the post-conviction collateral petition. *Id.* at 1313-15. The district court held that, under *Coleman*, post-conviction errors by counsel could not serve as cause to overcome a default and denied relief, and the Ninth Circuit affirmed. *Id.* at 1315. However, as the Ninth Circuit noted, *Coleman* left open the question of whether an ineffective-assistance-of-collateral-counsel claim could be cause "in those cases 'where state collateral review is the first place a prisoner can present a challenge to his

22

conviction,'" and the *Martinez* court turned its attention to that question. *Id.* (quoting *Martinez v. Schriro*, 623 F.3d 731, 736 (9th Cir. 2010)); *see Coleman*, 501 U.S. at 755, 111 S. Ct. at 2567-68.

In doing so, *Martinez* expressly avoided deciding whether a prisoner has a constitutional right to counsel in those post-conviction proceedings that represent the first opportunity to raise certain challenges to the prisoner's conviction (so called "initial-review collateral proceedings"). *Martinez*, 132 S. Ct. at 1315. Instead, the Court "qualifie[d] *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* The Court thus established an equitable, rather than constitutional rule, that permits a prisoner to overcome default of a trial-counsel claim when that claim can be raised for the first time only in a collateral proceeding and 1) the state does not appoint counsel in that initial-review collateral proceeding or 2) appointed counsel in the initial-review proceeding was ineffective under the standards of *Strickland*. *Id.* at 1318. Additionally, a petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," with "some merit." *Id.*

The Supreme Court took pains, however, to emphasize the narrow and limited nature of its holding in *Martinez*:

23

The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

In addition, the limited nature of the qualification to *Coleman* adopted here reflects the importance of the right to the effective assistance of trial counsel and Arizona's decision to bar defendants from raising ineffective-assistance claims on direct appeal. Our holding here addresses only the constitutional claims presented in this case, where the State barred the defendant from raising the claims on direct appeal.

*Id.* at 1320 (citations omitted). And while the dissent in *Martinez* expressed skepticism that this "newly announced 'equitable' rule will remain limited to ineffective-assistance-of-trial-counsel cases," *id.* at 1321 (Scalia, J., dissenting), the Supreme Court has so far only extended the exception to cases where the state's procedural system, while ostensibly allowing ineffective-assistance-of-trial-counsel claims to be raised on direct review, makes it virtually impossible to do so in reality. *See Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1914-15 (2013). But as this Court has repeatedly emphasized, *Martinez* does not extend beyond claims of ineffective assistance of *trial* counsel. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 945 (11th Cir. 2014); *Arthur v. Thomas*, 739 F.3d 611, 630 (11th

24

Cir. 2014) ("As our discussion shows, the *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period."); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) (per curiam) ("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel.").

## III.

On appeal, Hamm argues first that the Alabama sentencing court impermissibly relied on "unconstitutionally obtained" Tennessee convictions as an aggravating factor that led the state court to impose the death penalty, in violation of *Johnson v. Mississippi*, 486 U.S. 578, 108 S. Ct. 1981 (1988), and Hamm's due-process rights. Hamm asserts that his guilty pleas in Tennessee in 1978 violated *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709 (1969), because Hamm was never informed of his constitutional right to confront his accusers or his privilege against self-incrimination, and was never informed that he was waiving these constitutional rights by pleading guilty.[6]

---

[6] Although Hamm confidently asserts that his Tennessee plea "was clearly invalid under *Boykin*," we do not find a *Boykin* violation so patently obvious here. *Boykin* requires an "affirmative showing that [a guilty plea] was intelligent and voluntary." 395 U.S. at 242, 89 S. Ct. at 1711. And while Hamm was not informed of certain specific rights, the plea colloquy does support the notion that his guilty plea was intelligent and voluntary. And the binding precedent

25

The district court found that Hamm could not challenge the Tennessee convictions through his § 2254 petition, as those convictions, which had expired and were no longer subject to direct or collateral attack, were conclusively valid and unassailable on a § 2254 petition attacking Hamm's Alabama death sentence. Alternatively, the district court also determined that Hamm's claim with respect to the Tennessee convictions was procedurally defaulted and that the default could not be overcome. Hamm attacks both holdings on appeal on a variety of grounds. For the reasons set forth below, we affirm the district court's holding on both rationales.

A.  Under *Coss*, Federal Courts Do Not Have Jurisdiction to Entertain a Challenge to the Validity of Hamm's Tennessee Convictions

Hamm argues that the holding of *Johnson* precludes consideration of the "invalid" Tennessee convictions as an aggravating circumstance. In *Johnson*, the defendant was sentenced to death in Mississippi based, in part, on the aggravating

_____

of both the Sixth and Eleventh Circuits indicates that *Boykin* does not necessarily require specific articulation and express waiver of the constitutional rights of which Hamm was not expressly informed. *See McChesney v. Henderson*, 482 F.2d 1101, 1106, 1110 (5th Cir. 1973) ("We hold, therefore, that there is no requirement that there be express articulation and waiver of the three constitutional rights referred to in *Boykin*, by the defendant at the time of acceptance of his guilty plea, if it appears from the record that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences."), *cert. denied*, 414 U.S. 1146 (1974); *see also Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991); *Brown v. Jurnigan*, 622 F.2d 914, 915 (5th Cir. 1980), *cert. denied*, 449 U.S. 958 (1980); *Armstrong v. Egeler*, 563 F.2d 796, 799 (6th Cir. 1977); *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975); *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010). Contrary to Hamm's certainty, we find the question of whether Hamm's Tennessee pleas were intelligent and voluntary to be debatable at best, but we do not resolve this debate because binding Supreme Court case law precludes us from reaching the merits of this claim.

26

circumstance of a prior conviction in New York.  486 U.S. at 581, 108 S. Ct. at 1984.  Following his Mississippi conviction, the New York courts reversed the New York conviction.  *Id.* at 582, 108 S. Ct. at 1985.  Johnson challenged his death sentence in Mississippi on the grounds that the reversed New York conviction could not serve as an aggravating circumstance, but the Mississippi Supreme Court upheld the death sentence.  *Id.* at 583, 108 S. Ct. at 1985.  The Supreme Court reversed that decision and remanded for new sentencing proceedings.  *Id.* at 590, 108 S. Ct. at 1989.  The Court recalled the "special need for reliability" in death cases, *id.* at 584, 108 S. Ct. at 1986 (citation and quotation marks omitted), and observed, "It is apparent that the New York conviction provided no legitimate support for the death sentence imposed on petitioner.  It is equally apparent that the use of that conviction in the sentencing hearing was prejudicial."  *Id.* at 586, 108 S. Ct. at 1987.

Facially, of course, Hamm's case differs from *Johnson* in one important respect:  Hamm's Tennessee convictions have never been declared invalid by any court, and, in fact, Hamm's direct challenges to those convictions were rejected by the state and federal courts in Tennessee.  Consequently, Hamm's case falls squarely within the Supreme Court's holding in *Lackawanna County District Attorney v. Coss*.

In *Coss*, the Supreme Court addressed the question of "whether federal postconviction relief is available when a [state] prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." 532 U.S. at 396, 121 S. Ct. at 1570. Coss had been convicted in 1986 of simple assault, institutional vandalism, and criminal mischief and sentenced to two consecutive prison terms of six months to one year. *Id.* at 397, 121 S. Ct. at 1570-71. Coss filed a challenge to those convictions in Pennsylvania court alleging they were constitutionally invalid because of ineffective counsel. The Pennsylvania courts never ruled on those claims and Coss finished serving his sentence. *Id.* at 397-98, 121 S. Ct. at 1571.

In 1990, Coss was convicted on charges of aggravated assault. *Id.* at 398, 121 S. Ct. at 1571. After his initial sentence of six-to-twelve years was vacated, the state court then reimposed a six-to-twelve-year sentence based, in part, on his 1986 convictions. *Id.* at 398-99, 121 S. Ct. at 1571. Coss then filed a federal habeas petition under § 2254, arguing that his sentence had been illegally enhanced by the 1986 convictions, which were allegedly invalid because of the ineffective assistance of counsel. *Id.* at 399, 121 S. Ct. at 1572. The district court found that it had jurisdiction to consider the validity of the 1986 convictions, and it held an evidentiary hearing where it found that the 1986 counsel was ineffective but that habeas was inappropriate because Coss was not prejudiced by counsel's deficient

performance.  *Id.* at 400, 121 S. Ct. at 1572.  The Third Circuit affirmed the exercise of jurisdiction but reversed the district court's determination that no prejudice had been suffered.  *Id.*

The Supreme Court reversed, with Justice O'Connor writing for five Justices, holding

> that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.* at 403-04, 121 S. Ct. at 1574 (citation omitted).  The Supreme Court based its decision "on considerations relating to the need for finality of convictions and ease of administration."  *Id.* at 402, 121 S. Ct. at 1573.

Five Justices also joined the part of the opinion that identified an exception to this rule when "the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*."  *Id.* at 404, 121 S. Ct. at 1574.  The Court noted that the failure to appoint counsel is a "unique constitutional defect" of a jurisdictional nature, deserving "special treatment."  *Id.* (citations and internal quotation marks omitted).  The Court also noted that this *Gideon* exception did not

29

implicate ease-of-administration concerns because "failure to appoint counsel . . . will generally appear from the judgment roll itself, or from an accompanying minute order." *Id.* (alteration in original) (citations and internal quotation marks omitted). The failure-to-appoint-counsel exception is the only exception joined by five Justices in *Coss*, and, consequently, it is the only recognized exception to the general prohibition on reviewing prior expired sentence-enhancing convictions.

Justice O'Connor also identified two other possible exceptions to the rule announced in *Coss*, but only two other Justices joined this part of her opinion. *Id.* at 405-06, 121 S. Ct. at 1574-75; *see id.* at 395, 121 S. Ct. at 1570 (noting O'Connor, Rehnquist, and Kennedy as the only Justices joining Part III-B of the opinion). Those exceptions include a defendant's lack of fault in failing to obtain review of the prior convictions or the discovery of "compelling evidence that he is actually innocent" of the prior crimes. *Id.* at 405, 121 S. Ct. at 1575. These exceptions were rooted in the notion that, "[i]n such situations, a habeas petition directed at the enhanced sentence may effectively be the first and only forum available for review of the prior conviction." *Id.* at 406, 121 S. Ct. at 1575.

Hamm offers four reasons for why *Coss* should not apply to bar a merits review of his expired Tennessee convictions. First, he argues that *Coss* is applicable to non-capital cases only and that its holding has never been "extended" to the death-penalty context. Second, he asserts that because *Coss* was decided

more than a decade after Hamm's Alabama conviction and appeals, it is inapplicable, and, instead, the "unqualified rule" of *Johnson* applies. Third, Hamm contends his Tennessee convictions "involved the outright denial of the right to the effective assistance of counsel and the right to counsel on appeal," so they fall within the majority-identified exception outlined in *Coss*. And finally, Hamm argues his case represents "the rare type of case where, after the time for collateral review of the underlying prior conviction has expired, a defendant obtains evidence of actual innocence," falling within the actual-innocence exception of the plurality portion of *Coss*. We find, however, that *Coss* bars revisiting Hamm's expired Tennessee convictions and that none of Hamm's attempts to distinguish *Coss* are persuasive.

### 1. Is Coss *Applicable in Capital Cases?*

Hamm argues, essentially, that *Coss* does not apply to capital cases because "death is different." In Hamm's view, *Johnson* established a rule applicable to capital cases that has not been overturned or overruled by *Coss* or any other decision. Hamm's position is that the motivating concerns of *Coss*—the need for finality in convictions and ease of administration—are necessarily outweighed in the capital context by the need for reliability in the death sentence, and, consequently, a court should ensure that reliability by reaching the merits of

31

expired convictions used to enhance a capital sentence, despite the holding of *Coss*.

The problem with Hamm's argument is twofold. First, the *Johnson* "rule" requires, as a predicate, a prior enhancing conviction to be <u>invalidated</u>. *See* 486 U.S. at 585-87, 108 S. Ct. at 1986-87. While Hamm strenuously argues that the Tennessee convictions are constitutionally invalid under *Boykin*, those convictions have never been invalidated by any court, despite Hamm's attempts to do so. *Johnson* simply does not address convictions that have never been overturned, nor does it discuss the scope of a federal court's review of presumptively valid but challenged convictions used in imposing a death sentence.

The second problem with Hamm's argument is that *Coss* is the case most directly on point with respect to the scope of a federal court's review under § 2254 of challenged but expired sentence-enhancing prior convictions. While *Coss* did not specifically address the death penalty, it also did not engage in any analysis of the type of sentence involved. *Coss*, instead, construed the scope of federal review under 28 U.S.C. § 2254—the same statutory vehicle being used by Hamm to seek review of his case. And *Coss* directly stands for the proposition that a prisoner cannot challenge an expired sentence-enhancing conviction when challenging the enhanced sentence under § 2254, regardless of what that sentence is.

*2. Does* Coss *Modify* Johnson *in a Way That Implicates Retroactivity Concerns?*

Hamm has also argued that *Coss*, issued in 2001, "modified" *Johnson* after Hamm was sentenced, and, therefore, the *Johnson* rule was the only rule that "applied at the relevant time."[7] However, *Coss* cannot plausibly be read as "modifying" *Johnson* in any way.  In fact, *Coss* never once even mentions *Johnson*.  Hamm cites no case law that has construed *Coss* as a modification of *Johnson*.  As noted above, *Coss* construes the scope of review on § 2254 petitions without regard to the sentence at issue.  And as Hamm's § 2254 petition was filed in 2006—five years after *Coss* was issued—*Coss* clearly applies to Hamm's petition.  Accordingly, we find no merit in Hamm's arguments that an "old" *Johnson* rule overcomes the dictates of *Coss*.

*3. Does Hamm Fall Within* Coss*'s* Gideon *Exception?*

Hamm also contends that his Tennessee convictions "involved the outright denial of the right to the effective assistance of counsel and the right to counsel on appeal," bringing his case within the only exception adopted by a majority of the justices in *Coss*:  the failure to appoint counsel in violation of *Gideon v. Wainwright*.  He argues that his Tennessee counsel was constitutionally ineffective during the plea hearing and, apparently, by failing to advise Hamm that he could

---

[7] *Johnson* was handed down in 1988, after Hamm was sentenced but while his conviction was pending direct review.

33

appeal the Tennessee guilty pleas.  According to Hamm, his Tennessee counsel's ineffectiveness brings his case within the failure-to-appoint-counsel exception.  Hamm also asserts that a failure to appoint counsel for an appeal of his Tennessee pleas likewise falls within this exception.

Even assuming *arguendo* that Hamm's Tennessee counsel was ineffective, these "*Gideon*-type" errors do not fall within the *Coss* exception.  While the Supreme Court has spoken of constitutionally ineffective counsel as "not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," *see Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, we do not believe the Supreme Court intended to extend its failure-to-appoint exception in *Coss* to ineffective-assistance claims.  First, the *Coss* opinion expressly mentions only the "failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon*," 532 U.S. at 404, 121 S. Ct. at 1574; it somewhat tellingly does not expand its exception to include ineffective-assistance claims under *Strickland*, when it could have, and *Gideon* itself involved only the appointment of counsel to indigent defendants for trial. *See id.* at 404-05; 121 S. Ct. at 1574.  Even more persuasively, though, the basis on which Coss attacked his expired convictions was that his counsel in those proceedings was constitutionally ineffective.  *See id.* at 397, 400, 121 S. Ct. at 1571, 1572.  The five-Justice majority that agreed on the *Gideon* exception did not

34

bother to analyze Coss's ineffective-assistance argument, strongly suggesting that it did not contemplate such challenges to fall within the exception.[8]

Also persuasive is that in discussing this exception, Justice O'Connor notes that "allowing an exception for *Gideon* challenges does not implicate our concern about administrative ease, as the 'failure to appoint counsel . . . will generally appear from the judgment roll itself, or from an accompanying minute order.'" *Id.* at 404, 121 S. Ct. at 1574 (alteration in original) (citing *Custis v. United States*, 511 U.S. 485, 496, 114 S. Ct. 1732, 1738 (1994)). Clearly, ineffective-assistance claims cannot be easily determined from the "judgment roll" or "minute order," and instead involve inquiries that "often depend on evidence outside the trial record." *Cf. Martinez*, 132 S. Ct. at 1318. Thus, in carving a *Gideon* exception out of the rule in *Coss*, the Supreme Court did not intend to include ineffective-assistance claims as part of that exception.

For similar reasons, the narrow focus on *Gideon* in *Coss* suggests that the failure to appoint appellate counsel, as required by *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814 (1963), does not fall within the exception outlined in *Coss* for a failure to appoint trial counsel. Moreover, Hamm apparently did not appeal his

---

[8] Additionally, the related decisions of *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732 (1994), and *Daniels v. United States*, 532 U.S. 374, 121 S. Ct. 1578 (2001), both involved ineffective-assistance and faulty-guilty-plea claims that the Supreme Court distinguished from the "unique constitutional defect" of *Gideon* claims, holding that while *Gideon* error permitted an assault on sentence-enhancing state convictions, ineffective-assistance and faulty-guilty-plea claims did not. *See Custis*, 511 U.S. at 496, 114 S. Ct. at 1738; *Daniels*, 532 U.S. at 378, 382, 121 S. Ct. at 1581, 1583.

35

guilty-plea convictions, either because he could not or was incorrectly advised that he could not,[9] and he does not show evidence that he ever was denied access to appellate counsel. Thus, it is not even clear that a *Douglas* violation even arguably exists.

Here, the record reflects that Hamm was represented by counsel, Travis Gobble, during his 1978 hearing where he pled guilty and was convicted of two counts of simple robbery. The record does not reflect that Hamm was ever denied appointed counsel in violation of *Gideon* (or for that matter, *Douglas*). His only argument relating to the *Gideon* exception of *Coss* is that his Tennessee convictions suffer from the "*Gideon*-type" errors of ineffective assistance in the Tennessee proceedings. But the majority opinion in *Coss* recognizes an exception for *Gideon* error only, not "*Gideon*-type" errors. Therefore, Hamm cannot avail himself of the sole exception outlined in *Coss*.

---

[9] The district court, in considering this argument below, held that Hamm did not have a right to appeal his Tennessee guilty pleas. The district court relied on *Capri Adult Cinema v. State*, 537 S.W.2d 896, 899 (Tenn. 1976), which stated "that ordinarily there can be no appeal from a plea of guilty," in finding that Tennessee did not permit Hamm to appeal his pleas. However, both *Capri* and *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), suggest that in Tennessee in 1978, a defendant likely could appeal the *voluntariness* of his guilty plea. *Capri*, 537 S.W.2d at 898; *Mackey*, 553 S.W.2d at 340. This issue is harmless, though, because *Douglas* error is not an exception to *Coss*, and it is not even clear that Hamm was *denied* appellate counsel in violation of *Douglas*.

*4. Does* Coss *Provide an "Actual Innocence" Exception That is Available to* Hamm?

Finally, Hamm argues that his case falls within the *Coss* plurality's "actual innocence" exception because it represents "the rare type of case where, after the time for collateral review of the underlying prior conviction has expired, a defendant obtains evidence of actual innocence." The "actual innocence" argument is unpersuasive for a number of reasons, including the fact that the "newly discovered evidence" consists of either victim "recantations" or witness statements that could have been presented or argued at the time of the original Tennessee trial, and the fact that Hamm's actual-innocence arguments have already been raised in and rejected by Tennessee state and federal courts. But the biggest problem for Hamm is that the "actual innocence" exception language in *Coss* was joined by only three Justices and has not been embraced by a majority of the Supreme Court as an exception to the general rule established in *Coss*.

Hamm tries to overcome this fact by arguing that *Marks v. United States*, 430 U.S. 188, 97 S. Ct. 990 (1977), requires this court to adopt the three-Justice plurality discussing the innocence exception as the "narrowest ground" involved in deciding *Coss*. In *Marks*, the Supreme Court stated, "When a fragmented Court decides a case *and no single rationale explaining the result enjoys the assent of five Justices*, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430

37

U.S. at 193, 97 S. Ct. at 993 (emphasis added) (internal quotation marks and citation omitted). *Marks* was addressing the effect of a prior case where three Justices wrote the opinion of the court and two other Justices concurred in the judgment based on the broader reasoning they had put forward in other cases and incorporated by reference into the opinion. *Id.* at 193-94, 97 S. Ct. 993-94. Unlike the case discussed in *Marks*, the *Coss* judgment and its *Gideon* exception, "enjoy[ed] the assent of five Justices." There was no separate concurring-in-the-judgment opinion needed to reach a majority in *Coss*. In fact, Hamm's view would require us to completely disregard the fact that two of the majority's Justices obviously chose not to endorse the "actual innocence" exception.

Even assuming for the sake of argument that the "actual innocence" exception announced by Justice O'Connor were valid law, Hamm's situation does not fit within its terms. As specifically articulated, the exception applies when, "after the time for direct or collateral review has expired, a defendant may obtain compelling evidence that he is actually innocent of the crime for which he was convicted, *and which he could not have uncovered in a timely manner*." *Coss*, 532 U.S. at 405, 121 S. Ct. at 1575 (emphasis added). Here, Hamm's "evidence" of "actual innocence" consists of witness recantations and other eye-witness testimony that was all theoretically available within the time he could have challenged his Tennessee convictions during a trial in the first instance. Although

38

Hamm cursorily states that he "exercised due diligence in finding this evidence and presenting it," he does not explain how waiting fourteen years after his Tennessee convictions to "discover" and present this evidence satisfies any meaning of the word "diligent."

In conclusion, the Supreme Court's decision in *Coss* controls the question in this case of whether Hamm can challenge the validity of his Tennessee convictions in a § 2254 petition challenging his Alabama death sentence and answers that question in the negative. None of Hamm's attempts to circumvent the *Coss* decision or apply its sole recognized exception are ultimately persuasive in light of binding Supreme Court precedent. Accordingly, the district court correctly concluded that it had no jurisdiction to reach the merits of Hamm's challenge to his Tennessee convictions while evaluating his § 2254 petition.

B.  Even If *Coss* Does Not Bar Consideration of the Tennessee-Conviction Claims, They Are Nonetheless Procedurally Defaulted

After holding that it could not entertain a challenge to the validity of Hamm's Tennessee convictions due to the rule in *Coss*, the district court held in the alternative that Hamm's substantive claims were procedurally defaulted and that Hamm could not establish cause to overcome the default. The district court also found that Hamm could not overcome the default by demonstrating a fundamental miscarriage of justice. On appeal, Hamm appears to be arguing that he can establish cause for the default because his Alabama trial and appellate

39

counsel were constitutionally ineffective by failing to investigate and challenge his Tennessee convictions during the sentencing and appeal proceedings.  Hamm is also apparently arguing that his alleged "actual innocence" of the Tennessee convictions entitles him to habeas relief.   And finally, Hamm argues that the "pervasive" problems with his counsel's representation in both Tennessee and Alabama entitle him to "equitable relief" under *Martinez*.    None of these arguments are availing.

### *1. The State and District Courts' Decisions*

Hamm asserted an independent ineffective-assistance-of-counsel claim on this topic in his Rule 32 petition in Alabama state court.  The Rule 32 trial court passed on the merits of the claim:

> Hamm contends in paragraph 170 of the Rule 32 petition that his attorneys were ineffective because they failed to adequately investigate and challenge his prior convictions in Tennessee. . . .
>
> Hamm failed to present facts in support of this claim in his Rule 32 petition or at the evidentiary hearing. In fact, Hugh Harris testified that he was aware of the Tennessee convictions and had obtained copies of the convictions before trial. (Rule 32 transcript, pp. 16-17) Thus, Mr. Harris had investigated these convictions before the trial.  The records introduced at Hamm's trial to prove these convictions show that Hamm was charged with two counts of armed robbery but pleaded guilty to simple robbery.  There is no evidence in the record that Hamm did not know what he was doing when he pleaded guilty to these charges.  Further, a review of the records filed by Hamm in the Rule 32 proceeding show that a

40

> challenge to these guilty pleas was unsuccessful in 1995 and would have been unsuccessful in 1986. (Rule 32 transcript, Hamm's Exhibit 6) Hamm has not shown that his attorney's performance was deficient or that the outcome of the proceedings would have been different had his attorneys challenged the Tennessee convictions. This claim is therefore without merit.

Rule 32 Op. at 32-33.

On appeal in state court, the state of Alabama argued that the substantive claim about the use of the Tennessee convictions as an impermissible aggravating circumstance was procedurally barred because it could have been raised at trial or on direct appeal but was not, and the ACCA agreed. *Hamm Collateral Appeal*, 913 So. 2d at 479. The ACCA treated Hamm's related ineffective-assistance argument (that counsel should have investigated and challenged the convictions) as an "alternative" argument and affirmed the Rule 32 Court's denial of the ineffective-assistance claim, stating, "Hamm's assertion that Alabama trial counsel had a duty to challenge in a Tennessee court the merits of the nine-year-old convictions so that he could then prevent consideration of the prior convictions at the 1987 capital sentencing hearing is not supported by any legal authority."[10] *Id.*

---

[10] Hamm makes a convoluted argument that these two holdings by the ACCA are "inconsistent" and thus represent a clearly erroneous and unreasonable application of federal law. According to Hamm, "Both of these contentions cannot be true: either trial counsel was in fact effective, in which case counsel would have undertaken a reasonable investigation of the prior conviction under the circumstances and with due diligence, discovered the invalidity of the prior [convictions] . . . ; or a reasonable investigation could not unearth the invalidity of the conviction, and the claim could not have been raised on trial or direct appeal." Hamm appears to be conflating the procedural issue with the merits of counsel's effectiveness to create

41

Hamm effectively concedes[11] that this claim is procedurally defaulted, but insists

he can overcome the default.

### 2. Cause and Prejudice to Overcome Default of the Substantive Prior-Convictions Claim: Ineffective Assistance of Counsel

Because the Alabama state courts weighed the merits of Hamm's

ineffective-assistance claim, those decisions are entitled to deference and can be

set aside only if they are contrary to or involve unreasonable applications of federal

law.  28 U.S.C. § 2254(d).  Additionally, when evaluating the performance prong

of an ineffective-assistance claim in the habeas context, a federal court's review is

"doubly deferential," looking through both the "highly deferential" lens of

---

inconsistency where there is none.  The procedural ruling—*when* Hamm's counsel could have *raised* a claim about the use of an invalid aggravating factor—is distinct from the substantive question of whether the aggravating factor was actually invalid, or whether counsel was ineffective in not investigating its validity.

[11] In his reply brief, Hamm contends that there can be no procedural default because a claim about the validity of his Tennessee convictions "is not the type of claim that should be raised at trial or on appeal, but rather is the type of claim that is properly raised after proper investigation in Rule 32 post-conviction proceedings."  Hamm offers no legal support for this assertion, although, his argument that the claim can be raised only in collateral proceedings because his trial counsel had insufficient time to investigate the prior convictions before trial seemingly undermines his argument that trial counsel was ineffective for not investigating the prior convictions.  Moreover, Hamm continues to conflate procedural and substantive issues.  Despite Hamm's contention, the procedural default would still exist because an invalid aggravating factor should still be challenged at trial or on appeal.    But if it were inherently impossible for counsel to discover the invalidity of the aggravating factor in time, cause for overcoming the default would not be based counsel's ineffectiveness but rather on some other "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule," *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645, such as "a showing that the factual or legal basis for a claim was not reasonably available to counsel," *McCleskey*, 499 U.S. at 494, 111 S. Ct. at 1470 (citation and internal quotation marks omitted).

42

*Strickland*[12] and the deferential lens of § 2254(d). *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1403 (2011).

Hamm argues that his trial and direct-appeal counsel were constitutionally ineffective because they failed to adequately investigate and challenge the validity of the Tennessee convictions used as an aggravating circumstance in his death sentence. The question before the state court, then, was whether *Strickland* required Hamm's trial counsel to conduct such an investigation or challenge. The question before the federal court is whether the state court's answer to that question is contrary to or an unreasonable application of *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 100-01, 131 S. Ct. 770, 785 (2011). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, [if none were given,] could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this

---

[12] To prevail on an ineffective-assistance claim under *Strickland*, a petitioner must show that (1) counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment and (2) that counsel's performance prejudiced the defense to the extent the defendant was deprived of a fair, reliable trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064). A court applies a strong presumption that counsel's representation fell within the wide range of reasonable professional conduct. *Id.* To establish prejudice, a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2052).

43

Court." *Id.* at 102, 131 S. Ct. at 786; *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 910 (11th Cir. 2011). If fair-minded jurists could disagree over the correctness of the state court's determination, the federal habeas claim is precluded. *Harrington*, 562 U.S. at 102, 131 S. Ct. at 786.

Hamm's argument rests largely on *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456 (2005), in which the Supreme Court held that a "lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial," even if the defendant does not suggest such evidence exists. *Id.* at 377, 125 S. Ct. at 2460. Rompilla was convicted in Pennsylvania of murder and related offenses. *Id.* at 378, 125 S. Ct. at 2460. During the sentencing phase, the prosecutor sought to prove as an aggravating factor that Rompilla "had a significant history of felony convictions indicating the use or threat of violence." *Id.* Rompilla's attorney was aware that the prosecutor intended to introduce Rompilla's prior rape-and-assault conviction as evidence and also was aware that the prosecutor intended to read the victim's testimony from the trial transcript to emphasize Rompilla's violent character. *Id.* at 383-84, 125 S. Ct. at 2464. Nevertheless, Rompilla's attorney never requested or reviewed the case file or transcript of the prior conviction, despite its ready availability in the same courthouse where Rompilla was being tried. *Id.* at 384, 125 S. Ct. at 2464. Instead, Rompilla's counsel limited his

44

investigation to discussions with Rompilla, his relatives, and three mental-health experts. *Id.* at 381-82, 125 S. Ct. at 2462-63.

The Supreme Court held that counsel's performance was constitutionally deficient because he failed to request and review the prior conviction's case file. The Court observed that a reasonable attorney in defense counsel's position would have done so, emphasizing Rompilla's counsel's awareness of the prosecution's intended use of the transcript and the ready availability of the file in the courthouse. *Id.* at 385-86, 125 S. Ct. at 2465. The Supreme Court also cited the American Bar Association's Standards for Criminal Justice[13] in effect at the time of Rompilla's trial, which advised counsel to "explore all avenues leading to facts relevant to . . . the penalty," including information in the possession of "the prosecution and law enforcement authorities." *See id.* at 387, 125 S. Ct. at 2466 (quoting the ABA Standards). This obligation "exists regardless of the accused's admissions or statements to the lawyer." *Id.* The Supreme Court took care to note, however, that it was not adopting a "*per se* rule" requiring counsel to completely review every prior conviction file in all cases, but that the unreasonableness of

---

[13] The district court felt that Hamm may have been arguing that the *Rompilla* Court wholesale adopted the ABA Standards as the framework for evaluating *Strickland* claims and rejected that argument as fruitless. While the district court was correct that the ABA Standards do not replace *Strickland*'s reasonableness inquiry, the ABA Standards are nonetheless viewed as persuasive guidance by the Supreme Court. *See Rompilla*, 545 U.S. at 387, 125 S. Ct. at 2466 ("We have long referred to these ABA Standards as guides to determining what is reasonable." (quoting *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S. Ct. 2527, 2536-37 (2003)) (internal quotation marks omitted)).

45

counsel's investigation in Rompilla's case was dependent on the facts of the case. *Id.* at 389-90, 125 S. Ct. at 2467; *see also id.* at 393-96, 125 S. Ct. at 2469-71 (O'Connor, J., concurring).

Here, the district court found *Rompilla* distinguishable on its facts. In Hamm's case, counsel had no notice that any underlying facts from the Tennessee convictions other than the convictions themselves would be used in the sentencing phase (and, in fact, no underlying facts beyond the convictions were used). Hamm's attorney, Harris, ordered copies of the convictions from Tennessee and discussed the guilty pleas with Hamm, who did not reveal any information that would have led Harris to conclude the pleas were involuntary or otherwise invalid. For these reasons, the district court found that Harris was not unreasonable in not requesting the plea-hearing transcript when he had no indication that any shade of doubt might have clouded the Tennessee convictions' validity. The State of Alabama basically adopts the district court's analysis as its argument on appeal.

We find that this is a close question, but ultimately conclude that Hamm is not entitled to relief. *Rompilla*, decided in 2005, did not announce a *per se* rule requiring investigation of prior-conviction case files in all cases. While the same ABA Standards the *Rompilla* Court found persuasive were in effect during Hamm's trial and arguably support the notion that Hamm's counsel should have obtained and explored the "avenue" of the Tennessee conviction files, the facts of

*Rompilla* are significantly distinguishable from Hamm's case. Unlike in *Rompilla,* there was no indication here that the prosecution would introduce anything more than the fact of Hamm's prior convictions during sentencing. Thus, there was no obvious need to check the transcript for the accuracy of the prosecution's quotation. Nor did Hamm's counsel have any indication that a review of the transcript would reveal other mitigation leads. And finally, Hamm's prior conviction file was not readily available in the Alabama courthouse but was located in another state.

Additionally, the context of *Rompilla* is different; there, an investigation would have turned up numerous mitigation leads, and counsel undoubtedly had a duty to present a mitigation case. But here, an investigation would have turned up a potentially questionable, but nonetheless still valid, conviction. The utility of that information would have depended on separate collateral proceedings in Tennessee, which, as discussed below, a reasonable attorney was arguably not required to bring.

Thus, to us, it is a close question whether counsel's failure to investigate the Tennessee plea transcript was deficient under *Strickland*. But the Alabama state courts found Hamm's counsel was not deficient. Under the deference due here, fair-minded jurists could disagree over the correctness of the state court's

47

determination that counsel's investigation was not deficient, so habeas relief is not proper. *See Harrington*, 562 U.S. at 102, 131 S. Ct. at 786.

Moreover, even if counsel's failure to investigate the file were deficient, no legal authority indicates that Hamm's trial counsel in Alabama had a duty to challenge the expired Tennessee convictions in Tennessee courts at any time before, during, or after Hamm's sentencing in 1987. Although Hamm attempts to stretch *Rompilla* to establish such a duty, nothing in *Rompilla* suggests that, at the time of Hamm's trial, *Strickland* obligated counsel to challenge the validity of prior convictions, either as a matter of course or under the facts of this case.[14] In the absence of any such authority, it is certainly debatable among fair-minded jurists whether the Alabama court was correct in determining that no legal authority supports Hamm's argument.

In summary, Hamm has failed to demonstrate that the Alabama courts unreasonably concluded that his trial counsel's not investigating or challenging his

---

[14] In 2003, the ABA issued revised "Guidelines" regarding the performance of counsel in death-penalty cases, which included the following Commentary language: "Counsel must also investigate prior convictions, adjudications, or unadjudicated offenses that could be used as aggravating circumstances or otherwise come into evidence. If a prior conviction is legally flawed, counsel should seek to have it set aside." *Rompilla*, 545 U.S. at 387 n.7, 125 S. Ct. at 2466 (citing ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. ed. 2003), *published in* 31 Hofstra L. Rev. 913, 1027 (2003)). This Commentary language was not included in original death-penalty guidelines, which were published in 1989 (after Hamm's trial), and was not included as part of the ABA Criminal Justice Standards in effect during the 1987 trial. While the ABA Guidelines suggest that now counsel would have an obligation to challenge a flawed prior conviction, in the absence of any other binding or persuasive legal authority in effect in 1987, it is debatable that the prevailing professional standards at the time would have required a challenge.

expired Tennessee convictions did not fall outside the wide range of reasonable professional conduct.[15]   Because counsel's performance was not deficient under *Strickland*, Hamm cannot establish cause[16] to overcome his procedural default by virtue of his counsel's allegedly ineffective assistance, particularly under the "doubly deferential" standard we must apply to *Strickland* claims in the habeas context.

### *3. Overcoming the Procedural Default Via a "Miscarriage of Justice"*

In the district court, Hamm attempted to overcome the procedural default by arguing that failure to address his substantive claim regarding the Tennessee convictions would result in a fundamental miscarriage of justice.  Hamm does not explicitly make this argument in his brief to this Court, but he does consistently reiterate his alleged "actual innocence" of the Tennessee robbery and claims that it is unjust that he should be executed "without at least one merits review" of the Tennessee convictions' validity.  Whether these arguments can be read as an

---

[15] Hamm raises in his appellate brief an argument he advanced below, that his trial counsel was otherwise ineffective because he failed to prevent the trial court from showing the sentencing jury the Tennessee records that noted Hamm had been indicted for "armed robbery" when his plea and convictions were only to "simple robbery."  This argument is not properly before us with respect to the substantive prior-convictions claim, as whatever "tainting" effect this language may have had is a separate claim from whether the convictions themselves were unconstitutionally obtained and erroneously used in sentencing.  Even if Hamm's trial counsel had been ineffective in failing to keep this language out of the jury's sight—and to be clear, we do not believe counsel was ineffective—the ineffectiveness with respect to the "armed robbery" language could not serve as cause to overcome a default of the claim that the convictions themselves should never have been used in sentencing.

[16] The district court did not address the "prejudice" prong of the "cause and prejudice" analysis, and we need not address it here, as Hamm has failed to show cause.

49

argument that the miscarriage-of-justice exception to procedural default applies here is questionable, but, nonetheless, we analyze why the district court was correct in holding that exception inapplicable here.

In *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S. Ct. 2514, 2518 (1992), the Supreme Court noted that, ordinarily, cause and prejudice is the means by which a petitioner must overcome the procedural default of his habeas claims. But when cause and prejudice cannot be established, a narrow exception exists when failure to hear the claims would result in a miscarriage of justice—in other words, the conviction of someone "actually innocent" of the crime. *Id.* at 339, 112 S. Ct. 2519 (citing *Murray*, 477 U.S. at 496, 106 S. Ct. at 2649). In the context of a capital-sentencing proceeding, the Supreme Court, while acknowledging the awkwardness of someone being actually "innocent" of the death penalty, held that the inquiry must be focused on the eligibility of the defendant for a death sentence under state law. *Id.* at 341, 346-48, 112 S. Ct. at 2520, 2523. Accordingly, to overcome a procedural default via the miscarriage-of-justice exception in the capital context, a petitioner must show "by clear and convincing evidence that but for constitutional error, no reasonable juror would find him *eligible for the death penalty under [state] law*." *Id.* at 348, 112 S. Ct. at 2523 (emphasis added); *see also Dretke v. Haley*, 541 U.S. 386, 388, 124 S. Ct. 1849 (2004).

50

As the district court noted, the Alabama sentencing court found that two aggravating factors existed in Hamm's case to warrant imposition of the death penalty:  the underlying robbery-murder itself and the prior Tennessee convictions.[17] *See Hamm Direct Appeal*, 564 So. 2d at 466.  Alabama requires the existence of just one aggravating factor to support the death penalty.  *See* Ala. Code § 13A-5-45(f).  Thus, even if consideration of the Tennessee convictions were assumed to be constitutionally erroneous, Hamm was still eligible for the death penalty by virtue of his underlying conviction for the capital crime of robbery-murder, itself an aggravating circumstance under Alabama law. Accordingly, Hamm cannot use the "miscarriage of justice" exception to overcome the procedural default of his substantive Tennessee-convictions claim.  And if Hamm cannot otherwise establish cause and prejudice to overcome the default, the Tennessee-convictions claim is procedurally defaulted and beyond the reach of federal habeas review.

### 4. Is there an Equitable Remedy Under Martinez?

As noted earlier, in *Martinez*, the Supreme Court, based on considerations of equity, issued a narrow holding that "[i]nadequate assistance of counsel at initial-

---

[17] The statutory aggravating circumstances in Alabama include the following: "The defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person," Ala. Code. § 13A-5-49(2), and "[t]he capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping," *id.* §13A-5-49(4).

review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315. *Martinez* dealt with the law in Arizona, where petitioners can bring ineffective-assistance-of-trial-counsel claims for the first time in a collateral proceeding only. *Id.* at 1313. *Martinez* based its rationale on the equitable concern that "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim," and without allowing cause to be established based on collateral-counsel's errors, no federal court will review the prisoner's ineffective-assistance-of-trial-counsel claim either. *Id.* at 1316.

From this language, Hamm tries to read a broad proposition that *Martinez* "provides for equitable relief in situations where a petitioner would otherwise not have the substance of a claim heard." Hamm argues that a federal habeas court should hear the merits of his Tennessee-convictions claim, because "[t]o fail to do so, and avoid substantive review by means of purely procedural hurdles, would amount to a straightforward violation of the principles of equity which drove the Court's holding in *Martinez*."[18]

But Hamm's novel argument is not supported by any legal authority. As noted above, the Supreme Court has so far extended the *Martinez* exception to only

---

[18] In some respects, Hamm is also arguing that he should be able to overcome procedural default on a "fundamental fairness" rationale, an argument the Supreme Court has long dismissed. *See Murray*, 477 U.S. at 493-497, 106 S. Ct. at 2648-50.

those cases where the state procedural system, while ostensibly allowing ineffective-assistance-of-trial-counsel claims to be raised on direct review, makes it virtually impossible to do so in reality. *See Trevino*, 133 S. Ct. at 1914-15. The exception still applies solely to defaulted ineffective-assistance-of-trial-counsel claims. *See Martinez*, 132 S. Ct. at 1320 ("The rule of *Coleman* governs in all but the limited circumstances here. . . . Our holding here addresses only the constitutional claims presented in this case . . . ."). And this Court has emphasized that *Martinez* does not extend beyond claims of ineffective assistance of trial counsel. *See Chavez*, 742 F.3d at 945; *Arthur*, 739 F.3d at 630; *Gore*, 720 F.3d at 816. No authority suggests that *Martinez* has created a broad equitable exception that would apply to Hamm's defaulted substantive claim about his Tennessee convictions.

Moreover, the logic of *Martinez* does not plausibly extend to Hamm's case. The equitable concern of *Martinez* and *Trevino* arose from the injustice posed when a claim that a state's rules forced, either legally or practically, to be raised in a first-level collateral attack was not raised because of collateral counsel's deficiencies. Accordingly, without an exception to the bar on raising collateral-counsel's ineffectiveness, no opportunity arose for a defendant to raise the substantive claim. Here, though, Hamm could and should have raised the substantive prior-convictions claim at trial or on direct appeal. He didn't and

defaulted the claim. To the extent that he was precluded from doing so by the ineffectiveness of his trial or appellate counsel, he could have *and did* raise that ineffectiveness issue in his collateral proceedings and received consideration of the merits of trial counsel's effectiveness in state court. Adopting Hamm's broad reading of *Martinez* would essentially require us to disregard or sweep away the existing law of procedural default in the habeas context. Accordingly, *Martinez* does not provide a broad equitable tool for Hamm to overcome the procedural default of his substantive prior-convictions claim.

For these reasons, we affirm the district court's denial of federal habeas relief based on Hamm's claim that his prior Tennessee convictions were impermissibly used as an aggravating factor in his death sentence. The Supreme Court's ruling in *Coss* prohibits us from reaching and assessing the validity of these convictions, and no exceptions permit Hamm to avoid the dictates of *Coss*. Alternatively, the district court properly found the claim to be procedurally defaulted, and Hamm has advanced no argument that allows him to overcome the default.

## IV.

In his second argument on appeal, Hamm asserts that the district court erred in not granting habeas relief on his claim that his trial counsel did not adequately investigate and present a mitigation case. Hamm argues that counsel failed to

54

uncover and present "a wealth of documents and testimonial evidence" concerning the criminal histories of Hamm's family members, Hamm's school records, and Hamm's medical and mental-health records. Hamm also argues that it was improper for his counsel to introduce the mitigation evidence he did present through the testimony of Hamm's sister, which, in Hamm's opinion, appeared to be "bald assertions" that "sounded like a bunch of lies" unsupported by any "corroborating" documentary evidence. After a thorough review, we affirm the district court on this issue as well.

The Alabama state courts considered this claim on its merits.[19] *See Hamm Collateral Appeal*, 913 So. 2d at 478-79, 486-88. Therefore, the "doubly deferential" standard of review applies to the state courts' evaluation of the performance prong here as well. Additionally, the review of this claim on federal habeas is "limited to the record that was before the state court that adjudicated the claim on the merits."[20] *Cullen*, 131 S. Ct. at 1398. In this case, that evidence

---

[19] Actually, in the district court (and the Rule 32 Court), Hamm presented his mitigation-case ineffective-assistance claims in three separate sub-claims. The district court found it prudent to address them together, and on appeal here, Hamm argues them as one claim as well.

[20] The only pertinent evidence that was excluded by the state courts is the affidavit of Dr. Dale Watson, a psychologist who diagnosed Hamm with "neuropsychological impairment and presumptively brain damage" and found Hamm was in the "borderline range of measured intellectual ability overall." The state court found Dr. Watson was not a licensed psychologist at the time of Hamm's trial and could not have offered expert testimony at that time. *Hamm Collateral Appeal*, 913 So. 2d at 478. Dr. Watson conducted his evaluation of Hamm in 1996 but did not prepare his written evaluation until 1999. *Id.* When Hamm's counsel attempted to admit Dr. Watson's written report during the Rule 32 hearing, the state objected on the basis that it could not cross-examine Watson, and the court sustained the objection. *Id.* The ACCA noted

includes the testimony of Hamm's trial attorneys Harris and Williams; certified copies of the extensive criminal records of Hamm's father and seven brothers, as well as the criminal records of other family members (Exhibit 1); Hamm's personal and family history, including references to Hamm's own past criminal conduct, as well as Hamm's vital, school, and employment records  (Exhibit 2); vital records for members of Hamm's family (Exhibit 3); medical and psychological records for members of Hamm's family (Exhibit 4); and Hamm's

---

that cross-examination would have been particularly important, given the time gap between Dr. Watson's examination and the compilation of his report.  *Id.* at 478 & n.8.  The ACCA concluded that the Rule 32 Court did not abuse its discretion in excluding Dr. Watson's report. *Id.* at 479.  Relying on 28 U.S.C. § 2254(e)(2), the district court declined to hold an evidentiary hearing on whether the Alabama court properly excluded the report.

On appeal, Hamm argues first that Watson's report is properly before this Court because it was "stamped and included as part of the Court record."  Hamm is quoting the Rule 32 transcript, where the state court acknowledged receipt of a plethora of documents Hamm had submitted *pro se*, despite being represented by appointed counsel.  *Id.*.  Based on the Rule 32 Court's statement that these documents that were submitted *pro se* were "included as part of the record," Hamm contends they were included within the state-court "record" within the meaning of *Cullen*.

While Hamm is correct that *Cullen* speaks in terms of the "record," he nevertheless fails to reconcile the Rule 32 Court's clear sustaining of the objection to admitting Watson's report, and the ACCA's upholding of that determination.  *See* 913 So. 2d at 478-79.  *Cullen*'s rationale rested on the record that was used in the state court's adjudication of the merits, 131 S. Ct. at 1398, and here the Watson affidavit was never admitted or used by the state court in adjudicating Hamm's claim.  Moreover, the state courts' underlying determination that Dr. Watson's affidavit was not part of the record is certainly entitled to deference under § 2254.

Hamm also argues that *Martinez* applies because his Rule 32 counsel was ineffective in not calling Dr. Watson to testify during the Rule 32 hearing.  However, as discussed above, *Martinez* applies only in the context of overcoming *defaulted* ineffective-assistance-of-trial-counsel claims.  Hamm's mitigation-related trial-counsel claim was not defaulted and was considered on the merits in state court; accordingly, collateral counsel's ineffective assistance is irrelevant to that claim.  Moreover, an unfavorable evidentiary ruling, while in some sense "procedural," is not a "procedurally defaulted" constitutional claim that can be overcome by cause and prejudice.  And finally, to the extent that Hamm is raising an independent claim for ineffective assistance of his collateral counsel as a basis for habeas relief, such a claim is not cognizable. *See Martinez*, 132 S. Ct. at 1320.

56

own medical records developed during his various periods of incarceration (Exhibit 5).

The ACCA, in reviewing the merits of this claim, upheld the Rule 32 Court's determination that "trial counsel conducted an adequate investigation into Hamm's past and were well aware of the difficult circumstances in which Hamm grew up," and that trial "counsel presented much of this information by way of testimony from Hamm's sister at the sentencing hearing." 913 So. 2d at 486. The ACCA also observed the Rule 32 Court's determination that Hamm had failed to establish prejudice under *Strickland* "because the evidence was cumulative and would not have affected the outcome of the proceeding," and the evidence was credited by the sentencing judge. *Id.* at 486-87. In addition, the court credited Harris's testimony that, as a matter of strategy, he would not have introduced many of the documents proffered in the Rule 32 hearing because they would have been detrimental to Hamm by, among other things, revealing his own sordid criminal history. *Id.* at 487. The ACCA agreed that Harris's trial strategy was "unassailable" and that counsel were not deficient in their investigation and presentation of mitigating evidence. *Id.* Further, the ACCA agreed that Hamm had demonstrated no prejudice. *Id.* at 488. The district court found this to be a reasonable application of *Strickland*.

57

The district court's conclusion is correct. Harris met with Hamm over twenty-five times before his trial; he had a good relationship with Hamm and no difficulties communicating with him. Although Harris presented only two witnesses at the sentencing hearing, the evidence that Hamm contends Harris failed to discover and introduce is in fact largely cumulative of the evidence that Hamm's sister Ruthie testified about. Thus, Hamm's case is distinguishable from the cases he cites like *Rompilla*, 545 U.S. at 383, 390, 125 S. Ct. at 2464, 2468 (failure to obtain the prior conviction file when the state's case relied heavily on it and that file would have revealed a plethora of unknown mitigation evidence); *Wiggins v. Smith*, 539 U.S. 510, 523-27, 123 S. Ct. 2527, 2536-38 (2003) (failure to compile a personal history and follow up on investigative leads and failure to present an actual mitigation case); *Williams v. Taylor*, 529 U.S. 362, 395, 120 S. Ct. 1495, 1514 (2000) (last-minute investigation, unjustified failure to investigate records of a "nightmarish childhood," and limiting presentation to just lukewarm character evidence); *Ferrell v. Hall*, 640 F.3d 1199, 1203, 1227 (11th Cir. 2011) (failure to conduct mental-health investigation, despite obvious "red flags," or investigate a history of abuse); and *Brownlee v. Haley*, 306 F.3d 1043, 1045 (11th Cir. 2002) (failure to investigate, obtain, or present any mitigation evidence to a jury). Unlike counsel in these cases, Hamm's counsel investigated and presented significant

mitigation information about Hamm's mental health and upbringing, albeit largely through the testimony of a single witness.

For example, Hamm says counsel should have introduced records concerning Hamm's epilepsy and history of seizures to "prove up" Hamm's mental-health impairment. But Ruthie testified that her brother suffered from epilepsy and had seizures in 1980 or 1981. Additionally, the record reflects that Harris, after learning about Hamm's seizures, had Hamm's mental health evaluated at a state medical facility, whose experts found Hamm was competent both at the time of trial and the time of the murder. Moreover, unlike in *Ferrell*, 640 F.3d at 1227-28, no record evidence exists that Hamm displayed any obvious "red flags" that he suffered from any other mental impairment. Thus, regarding Hamm's mental health, the sentencing jury and judge were made aware of Hamm's history of epilepsy, and the state courts' conclusion that Harris's mental-health investigation was adequate was not an unreasonable application of *Strickland*.

Similarly, Hamm argues that Harris should have introduced the voluminous criminal records of Hamm's father and brothers and other family members. But although he did not obtain the records specifically, Harris was aware of the extensive family criminal-history records. Ruthie testified that Hamm's father and

six of Hamm's brothers had been or currently were in prison.[21]    Nevertheless, Hamm asserts[22] that it was constitutionally deficient for Harris not to introduce the voluminous criminal records, contending that Ruthie's testimony was not credible because Harris presented no documentary evidence to back it up.

The success of Hamm's argument is significantly undermined, though, by the original sentencing judge's findings of fact, which show that he obviously believed Ruthie's account of the family criminal history.  *See Hamm Direct Appeal*, 564 So. 2d at 468.  Thus, with respect to the family criminal history, the state courts' conclusions that Harris's investigation satisfied the performance prong of *Strickland* and that the cumulative nature of the records defeated the prejudice prong of *Strickland* are not unreasonable applications of *Strickland*.  *See, e.g.*, *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1270-71 (11th Cir. 2012) (discussing cases where cumulative evidence undermines a finding of prejudice).

---

[21] It bears mentioning that the presentation of any family history during sentencing, including criminal history, child abuse, and alcoholism, was resisted by Hamm, who felt "it was 'nobody's business but his family's.'"  Rule 32 Op. at 76 (Appellant's App'x Vol. III at A618).

[22] Hamm renews on appeal an argument he made in the district court that Harris "straight lie[d]" during his Rule 32 testimony when he allegedly testified that he strategically chose not to reveal the family criminal records.  The district court concluded that Hamm misstated Harris's testimony, finding that Harris was referring not to the family criminal records but to Hamm's medical records from his prison time (Exhibit 5), which Harris did not want to introduce because it would have emphasized Hamm's past incarcerations.  We see no reason to disturb the district court's conclusion.

Hamm further contends that he can establish prejudice from the failure to introduce the family's criminal-history records based on the sentencing judge and jury's "mistaken" conclusion that the Hamm women had overcome their terrible upbringing. Hamm bases this contention on Harris's testimony of his post-trial conversations with the jury, where jury members recounted their feelings "that if Ruthie and her sister could have gone through life without being involved in crime that the boys could have too." The sentencing judge drew a similar conclusion, stating, "It is to be noted, however, that the two girl children were able to rise above this influence and appear to be good citizens." *See Hamm Direct Appeal*, 564 So. 2d at 468. The family criminal-history documents, though, reveal that Ruthie was charged with "[a]ssault with [i]ntent to [m]urder," and her sister Linda was charged with public drunkenness. Hamm argues that this establishes prejudice from the failure to introduce the family criminal records because, if the jury had seen the two (and only two) charges against his sisters, the jury's conclusion about the women's ability to persevere in the face of adversity would have been undermined, and it would have been less inclined to condemn Hamm.

We disagree that the failure to introduce the sisters' criminal histories undermines Hamm's death sentence. First, Ruthie was never convicted of the charge—which grew out of an intoxicated altercation among her extended family—apparently as part of an agreement that required the entire Hamm family

61

to leave Colbert County, Alabama, permanently. And, in stark comparison with the male members of the Hamm family, these are the only run-ins with the law reflected in the record for Ruthie or Linda. A single run-in with the law each over the course of their lives does not undermine confidence in the conclusion that the "girl children were able to rise above this influence"—particularly where they were not convicted, nor does it suggest that the sentencing court would have reached a different outcome.

The one category of evidence introduced during the Rule 32 proceedings that was not presented to the sentencing jury, and thus not cumulative of Ruthie's testimony, is evidence of Hamm's low intelligence and poor school performance. When asked if Hamm had "any problems at school," Ruthie testified, "No, sir, not that I can remember." In the Rule 32 proceedings, though, Hamm introduced evidence of his low grades and poor attendance; standardized testing scores that indicated that Hamm was in the bottom 1% for reading and bottom 4% for spelling among eighth graders; and the fact that Hamm dropped out of school in the ninth grade.

Although mitigation evidence of Hamm's intellectual standing should have been introduced, particularly to correct Ruthie's testimony that Hamm had no school problems, we conclude that Hamm has not established prejudice under *Strickland* due to counsel's failure to introduce Hamm's school records. Looking

at the circumstances and evidence as a whole, we cannot say that the addition of these school records creates "a mitigation case that bears no relation" to the case that was presented to the jury. *See Rompilla*, 545 U.S. at 393, 125 S. Ct. at 2469; *Holsey*, 694 F.3d at 1272. Given the horribly abusive environment in which Hamm was raised—a background that was fully conveyed to the sentencing jury— Hamm's poor school performance is not surprising,[23] and the absence of this evidence is not sufficient to undermine confidence in the outcome of Hamm's sentencing.

In summary, the Alabama state courts did not unreasonably apply *Strickland* to Hamm's claims that his trial counsel was deficient in investigating and presenting a mitigation case, and the district court did not err in denying habeas relief. Although Harris called only two witnesses and did not present evidence of Hamm's low intelligence, he did investigate and present to the jury an accurate picture of Hamm's harsh upbringing, drug and alcohol abuse, and epilepsy. The documentary evidence that Hamm produced during his Rule 32 proceedings enhanced the picture painted by Ruthie's testimony, but that's all it did. With the exception of the school records, Hamm has not pointed to distinct mitigation

---

[23] In fact, the sentencing judge did state that Hamm had a "poor education," although it is not clear from what evidence the sentencing judge drew that conclusion. *See Hamm Direct Appeal*, 564 So. 2d at 468.

evidence that Harris failed to uncover or present, but rather has identified merely more of the same evidence that was presented to the sentencing court.

And even if Harris's performance had been deficient, the evidence adduced at the Rule 32 hearing was cumulative of Ruthie's testimony, weakening any argument that the failure to introduce it during sentencing was prejudicial. In pronouncing sentence, the sentencing court largely credited those mitigating factors represented by Hamm's Rule 32 evidence. *Hamm Direct Appeal*, 564 So. 2d at 468. Hamm has not produced a quantity of evidence in his collateral attack that would alter the weight that a fact-finder may have applied against the aggravating factors, and consequently, the state courts' conclusion that there was no reasonable probability that the outcome would have been different had the additional evidence been presented is not unreasonable. For these reasons, we affirm the district court's denial of habeas relief on the mitigation-case claim.

## V.

In his final argument on appeal, Hamm contends that the prosecution violated his *Brady* rights by not turning over three sets of records that, according to Hamm, would have impeached the prosecution's chief witness, Douglas Roden. These records include Roden's diagnosis of borderline and, possibly, antisocial personality disorders, Roden's alcohol and drug addictions, and Roden's use of marijuana while in a drug-treatment program and, relatedly, his alleged lying to

64

counselors in the program.    On appeal, Hamm argues that his *Brady* claim concerning the Roden impeachment evidence was properly before the Rule 32 Court and that his claim is meritorious.    For the reasons set forth below, we conclude that Hamm's *Brady* claim here is procedurally defaulted and that a merits review is precluded.    Alternatively, we find the claim to be without merit.

A. The *Brady* Claim Is Procedurally Defaulted and the Default Cannot be Overcome

The last state court to consider the Roden *Brady* claim, the ACCA, found that Hamm had raised the claim for the first time in that court during his appeal of the Rule 32 Court's decision.  *Hamm Collateral Appeal*, 913 So. 2d at 479-480. Accordingly, the ACCA declined to address the merits because the claim was not presented to the Rule 32 trial court, citing Alabama law, which holds that "[a] petitioner for post-conviction relief may not raise on appeal grounds not presented in the petition or presented at the hearing on the petition." *Id.* (citing *Morrison v. State*, 551 So. 2d 435 (Ala. Crim. App. 1989)); *Morrison*, 551 So. 2d at 437. Hamm disagrees and contends that the Roden claim was properly presented to the Rule 32 Court when Hamm, despite being represented by counsel, submitted records to the Rule 32 Court *pro se* and asked that they be considered in support of his Rule 32 petition.

The district court found that the ACCA's procedural-default ruling was proper because Hamm did not fairly present the claim to the Rule 32 Court.  *Hamm*

65

*§ 2254 Order*, 2013 WL 1282129, at \*28.  Specifically, the district court noted that Hamm could have amended his 1991 Rule 32 petition to add the Roden *Brady* claim between the time that he discovered the records in 1995 and the time that he submitted them and participated in the Rule 32 hearing in 1999.  *Id.* at \*26.  The district court also noted that even when Hamm asked the Rule 32 Court to consider his collection of submitted documents, he never explained the relevance of the Roden documents, and neither Hamm nor his counsel mentioned the Roden *Brady* claim during the Rule 32 hearing.  *Id.* at \*26-27.

### *1. Was the Roden* Brady *Claim Presented to the Rule 32 Court?*

Whether a particular claim is subject to the doctrine of procedural default is a mixed question of fact and law that this Court reviews *de novo*.  *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (per curiam)).  A district court's findings of fact, though, are reviewed for clear error.  *Id.* at 1313 n.2 (citing *Byrd v. Hasty*, 142 F.3d 1395, 1396 (11th Cir. 1998)).

Here, the district court's determination that the Roden *Brady* claim was not fairly presented to the Rule 32 Court was not clearly erroneous, and it correctly interpreted the Alabama procedural rule precluding review at the appellate level of claims not presented in the Rule 32 petition to constitute a default of the Roden *Brady* claim.  Hamm does not raise any argument here that the Alabama

66

procedural rule was not an independent and adequate ground upon which to base its decision.  Hamm also does not dispute the district court's relevant underlying factual findings—that the petition was never amended, that the relevance of the Roden documents was never explained to the Rule 32 Court, and that the Roden *Brady* claim was never specifically articulated to the Rule 32 Court by anyone.

While Hamm asserts that merely submitting and seeking admission of these documents was sufficient to preserve and present his claim to the Rule 32 Court, the Supreme Court has noted that a claim is not fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351 (2004).  Additionally, merely seeking to admit evidence into the record, without more, is insufficient to present a claim.  *Cf. Castille v. Peoples*, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989) (rejecting that a claim is fairly presented in state court "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered").  Accordingly, Hamm's argument that his Roden *Brady* claim was presented to the Rule 32 Court solely through his delivery of the records to that court is unavailing.  Absent any other challenge to the Alabama procedural ruling, the district court was

correct in finding the Roden *Brady* claim was procedurally defaulted for purposes of federal habeas relief.[24]

### 2. Can Hamm Overcome the Default with Martinez?

Hamm attempts to overcome the procedural default of the Roden *Brady* claim by once again invoking *Martinez*. Here, Hamm argues that his post-conviction counsel was ineffective for not preserving the *Brady* claim during the Rule 32 proceedings and that this ineffectiveness should serve as cause to overcome the default of the Roden *Brady* claim. As already described above, though, *Martinez* applies to defaulted ineffective-assistance-of-*trial*-counsel claims only and not, for example, to *Brady* claims—a reality repeatedly emphasized in this Circuit. *See Martinez*, 132 S. Ct. at 1320; *Chavez*, 742 F.3d at 945; *Arthur*, 739 F.3d at 630; *Gore*, 720 F.3d at 816.

Admittedly, the logic of Hamm's *Martinez* argument is stronger here, because *Brady* claims often arise and can be presented only after direct appeals are exhausted. Under the circumstances of this case, Hamm's Roden *Brady* claim was

---

[24] Whether a claim is fairly presented to a state court, and thus exhausted for purposes of § 2254, is a related but separate and distinct concept from whether the claim has been procedurally defaulted—and the question here is whether Hamm's claim has been procedurally defaulted. *See Woodford v. Ngo*, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 2386-87 (2006). However, because the question of default here is tied to a state-law rule that bars review of unpresented claims, the Supreme Court's case law on fairly presenting a claim is appropriately instructive in determining whether Hamm's claim was not fairly presented and, thus, defaulted. *Cf. Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) ("The adequacy of state procedural bars to the assertions of federal questions . . . is itself a federal question." (internal quotation marks omitted) (quoting *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S. Ct. 1074, 1078 (1965))).

not discovered until after his direct appeals were exhausted, and the Rule 32 proceeding was Hamm's first opportunity to raise the claim. As Justice Scalia recognized in his *Martinez* dissent,

> Moreover, no one really believes that the newly announced "equitable" rule will remain limited to ineffective-assistance-of-trial-counsel cases. There is not a dime's worth of difference in principle between those cases and many other cases in which initial state habeas will be the first opportunity for a particular claim to be raised: claims of "newly discovered" prosecutorial misconduct, for example, *see Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), claims based on "newly discovered" exculpatory evidence or "newly discovered" impeachment of prosecutorial witnesses, and claims asserting ineffective assistance of appellate counsel. The Court's soothing assertion, *ante*, at 1320, that its holding "addresses only the constitutional claims presented in this case," insults the reader's intelligence.

132 S. Ct. at 1321 (Scalia, J., dissenting). But despite Justice Scalia's views on the matter, neither the Supreme Court nor any Circuit has applied *Martinez* to defaulted *Brady* claims.[25] Until the Supreme Court instructs otherwise, we are constrained to respect the explicitly limited holding of *Martinez* and the narrow construction our opinions have given that decision. Accordingly, Hamm cannot overcome the procedural default of his *Brady* claim by invoking *Martinez*.

---

[25] In fact, the Ninth Circuit has rejected such an application. *See Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013).

69

B.  Alternatively, the Roden *Brady* Claim Lacks Merit

Even if Hamm could overcome the default of his *Brady* claim, though, the claim itself is without merit.  Although the district court found that the claim had been properly procedurally defaulted, it nonetheless analyzed the merits of the claim.  *Hamm § 2254 Order*, 2013 WL 1282129, at *28-31.  It concluded that, contrary to Hamm's assertion, the evidence in the Roden health records was at best only marginally favorable in terms of impeachment and was "certainly not enough to undermine confidence in the guilt or penalty phase of the trial."  *Id.* at *30.

*Brady* holds that suppression of evidence that is favorable to an accused and material to guilt or punishment violates the accused's due-process rights.  373 U.S. at 87, 83 S. Ct. at 1196-97.  Impeachment evidence is included within the ambit of *Brady*.  *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Stickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999).  Favorable evidence is that evidence that "if disclosed and used effectively, it may make the difference between conviction and acquittal."  *Bagley*, 473 U.S. at 676, 105 S. Ct. at 3380.  In demonstrating the materiality of a *Brady* violation, "[t]he question is not whether

70

the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995). Suppressed evidence must be judged on the "cumulative," "net effect" such evidence has on the reasonable probability the result would have been different. *Id.* at 421, 437, 115 S. Ct. at 1560, 1567.

Assuming *arguendo* that the Roden records are both favorable to Hamm and were suppressed within the meaning of *Brady*, we nonetheless disagree that this impeachment evidence undermines confidence in Hamm's trial. First of all, Hamm's comparison of Roden's inconsistent and fabricated statements to the police with the informant's inconsistent statements in *Kyles* is irrelevant here, because Roden's statements were disclosed to Hamm's defense and used in the cross-examination of Roden at Hamm's trial. *See Hamm § 2254 Order*, 2013 WL 1282129, at *26 n.19, *30. Thus, any prejudice must stem from the cumulative effect of Roden's health records and those records alone. Although Hamm asserts that his cross-examination of Roden would have been different with these records, the only concrete example he gives is that Roden's history of alcohol abuse would have impeached his testimony that he (Roden) only "had a buzz going" on the night of the robbery-murder. Even assuming that Roden's psychological diagnosis, substance abuse, and "lying" undermined his testimony about his role in

71

the robbery-murder, we agree with the district court's conclusion that the cumulative effect of the suppressed impeachment evidence is small compared to the actual impeachment evidence used at trial: Roden's agreement to testify against Hamm in exchange for leniency, Roden's criminal history, and Roden's inconsistent statements to police in this case. *See id.* at *30. Additionally, the probability of a different outcome is further reduced by the strength of the evidence against Hamm, particularly Hamm's own confession. Accordingly, the district court did not err when it concluded in the alternative that Hamm's Roden *Brady* claim was without merit, because Roden's undisclosed health records fail to undermine the outcome of Hamm's trial.

## VI.

For the foregoing reasons, the district court's denial of Hamm's petition under 28 U.S.C. § 2254 is **AFFIRMED**.